Good morning and we'll proceed with Gomez v. Attorney General. Good morning, Your Honor. Your Honors, may it please the court, Anis Saleh for Petitioner Eduardo Gomez. This is not a complicated case. It really is not a complicated case. It's become a complicated case because of the underlying mess that was created in the record below and where the Board of Immigration Appeals and the immigration judge simply did not look at what was happening. And this was a direct result of the ineffective assistance by prior counsel. As my brief details, prior counsel, when the government sought to pre-terminate Mr. Gomez's application for 237 A1H relief, the immigration judge ordered prior counsel to file responses on two separate occasions as to why the client was eligible. He failed to do so. He then appealed the judge's removal order, said he's going to file a brief with the Board of Immigration Appeals, failed to file a brief with the Board of Immigration Appeals. Then, while the appeal was pending, 11 months before the appeal was decided, the Board of Immigration Appeals comes out in a matter of a gore. Does prior counsel file a motion to remand? No, he does not. He lets it sit. The appeal gets denied. He then misses the 30-day deadline to file a motion to reconsider based on a gore. He files a motion to reconsider late, couching it as a motion to reopen, based on a gore as intervening authority despite the fact that a gore was decided 11 months before the appeal was decided. And of course, by that point, the case is a complete mess. That's reason number one why this case is a mess. Reason number two is that the immigration judge completely missed the ball of what was going on before her. Mr. Gomez was a permanent resident. He was seeking a waiver under 237 A1H because he committed fraud in securing that residency. She, on the other hand, found that he wasn't eligible to apply for Adjustment of Status to become a resident. He wasn't seeking Adjustment of Status. He never sought Adjustment of Status. He was already a resident. So we have this decision saying, we have Mr. Gomez saying, I'm seeking Relief A. She denies him and orders him deported because he's not qualified for Relief B. She never discusses the 237 A1H waiver. She completely misses it. Then, obviously, you've got reason three. Prior counsel files an appeal, doesn't file a brief. So the Board of Immigration Appeals looks at the judge's decision and says, yes, you're right. He can't apply for Adjustment of Status. He doesn't qualify. I thought he did in 2009. He did. File an application for resident. That's correct, Your Honor. He did apply and was granted residence. That's how he became a legal permanent resident. That's correct. She thought he was reapplying. He came in under the WBP. Yes, for Europeans. And nobody questions that. Correct. And then if we go to Augur, I'm just dealing with the fifth requirement. You want to apply Augur, right? Yes, Your Honor. And the fifth requirement, he has to show, assuming he meets all the other four, that he was otherwise admissible in 2009. Except for the fraud. Except for the fraud. Yeah. Well, if you didn't do it except for the fraud, you would never get here. Correct. Exactly correct. It's a fraud waiver. Correct. Precisely. That's the point. He obtained that waiver. So the question here, I'm just trying to drill down on what the question here, for him to show prejudice from his ineffective assistance of counsel, was he admissible in 2009 other than through the fruits of the fraud? He was not inadmissible in 2009. Was he admissible? Yes, he was admissible because there was no other ground of inadmissibility other than the fraud itself. Okay. For example, I don't know if it's inadmissibility. It's was he admissible? He was admissible. Absolutely, Your Honor. In 2009. Yes, Your Honor. And they say, or government says, or maybe the IJ said, no, he was not admissible because he came here back in 2000, whatever it was, 2000, under the expressly says, when you come into that program, you're not admissible. Help me with that. That's completely, Your Honor, that's not correct. Okay. WVP is simply the visa waiver program where certain countries are exempt from needing visas. Certain nationals, certain countries aren't required to get visas to enter here. So people from those countries, for example, most European countries, in this case, Argentina, which no longer has it today, but back then it was a visa. That permits you to stay here for up to three months. Now, it also limits your rights here. And one of those limits, one of those very strict limits is you can't apply for permanent residency in the United States, except for three very limited exceptions. One is you marry a U.S. citizen. Two, you apply for asylum. Or three, you apply for a residency under the Cuban Adjustment Act, which is precisely what Mr. Gomez said. So he was admitted under the visa waiver program. Okay. Then he applied to adjust status by giving a false birth certificate claiming he was Cuban. The Immigration Service approved that and gave him a green card. He is a permanent resident. The Immigration Service later discovered, wait a second, that birth certificate's fake. So you provided for a pardon for that as a matter of discretion. He could go before a judge. The judge will hear out the case. And if he had the necessary anchor relatives, which he does, he's got two U.S. citizen kids, he can apply for that pardon. And the judge will decide whether he deserves the pardon as a matter of discretion and keep his residency. The problem is the immigration judge missed the point. She didn't realize he was already a resident. She thought he was trying to get residency in jurisdiction to do that if he was still a visa waiver. He wasn't still a visa waiver. He was a resident, like any other resident. So are you saying that admissible means not inadmissible? Or are you saying something different? The admission issue, Your Honor, has to do, and I beg you to hear me out on this one. In 1996, the Immigration Reform Act was enacted, which completely changed immigration law. And it instituted removal proceedings. And what happened was, you've got this provision of law that says this waiver's available. And the issue was whether or not it's available to someone who adjusted status to become a resident in the United States, whether the term is valid in the U.S. to become a resident, or it only applies to someone who got their green card at a U.S. consulate abroad and entered the United States. The issue was unresolved because prior to the 96th law, there was a matter of connolly, which the board held only someone who entered with an immigrant visa to get residency was eligible for the waiver, but someone who adjusted was not. And the DHS had taken the position, hey, that matter of connolly back in 84 said this, so this guy's not eligible. In the interim, while his appeal was pending, Agour comes out and the board says, no, no, no, no, that this statute now reads differently from it did back then. We hold that an adjustment of status is an admission for purposes of 237 A1H waiver, and that someone who adjusts status is eligible to seek it because the adjustment itself constitutes an admission. That's why the admission is important in this case, and that's the whole issue in this case, but it is a bureaucratic nightmare. Let me ask you a legal question. Interpretation of INS section 237 A1HI2, the one we're talking about, in matter of Agour, the BIA interprets it, gives a meaning to it. Yes, Your Honor. Am I Chevron bound to their determination? Absolutely, you are, because they're claiming it was ambiguous, and therefore they have the jurisdictional authority. Was it ambiguous? I believe it is. Of course, if it was plain on its face, I would hardly be bound by what they say. That's correct, but it's not plain on its face, and that's what the board struggled with, and it finally came out with a decision saying, we believe it is ambiguous, and it can be read this way. It's a reasonable interpretation, and that's why you had a dissent saying, I don't think it's a reasonable interpretation. So the point is, you are bound by Chevron deference in this case, absolutely, and if you look at the board's decision in Agour, and it's clear on page 582 of that board's decision, it says, paragraph two, if I can find the decision, it says, in unequivocal terms, we have determined that respondents' adjustment of status can be an admission for purposes of 237 A1H. In 2002, the respondent adjusts the status as the wife of a US citizen and was issued a permanent resident card reflecting that she was eligible to receive an immigrant visa and had one immediately available to her when she filed for this benefit. Accordingly, she was in possession of a document, i.e. a permanent resident card, that is equivalent to an immigrant visa. In that case, you're talking about, had the adjustment of status been procured by the fraud? Correct, it was a false marriage. It was a fake marriage to get an immigration benefit. It's just a different type of fraud. One's a fake marriage, it's a fake birth certificate. It's still fraud. Fraud in procuring the benefit. Let me go back to the five criteria under Agour. The first one is currently inadmissible because of the fraud. Okay, you're inadmissible because of the fraud in seeking the legal permanent adjustment of status, right? Correct. Okay, so that's number one, currently inadmissible because of that adjustment of status. Correct. Okay, then qualifying family member at the time of the admission was obtained by fraud. Okay, was in the possession of the visa or the equivalent, we can come back to that in a minute, and was otherwise admissible. It seems to me that fifth one is, you can't read the criteria to go back to, it is otherwise admissible in 2009, but you can't go back to was otherwise admissible to say, well, it's the legal permanent resident that's the fraudulent thing that's in number one, that needs one. Do you see what I mean? You're making one in five the same thing. No, let me explain to you why five is different. Because Scott was otherwise admissible. Let me explain to you why five is different. You could have a situation, and this happens all the time in immigration court. You have a client, let's say for example, who enters into a fraudulent marriage and also was convicted of a crime. They grant the person, and that crime in and of itself would have rendered that person inadmissible, ineligible for residency. Immigration later discovers that was a fake marriage. And then, the person says, I want to apply for a 237A1H waiver. The government stands up and says, no, no, no, no, no, no. Besides the fraud, he was also inadmissible for the crime. So that was exactly my earlier question, which is on step five. Are you interpreting otherwise admissible to mean not inadmissible? Correct, there was no other ground of inadmissibility that applied to him. He was solely inadmissible for the fraud he committed. There was nothing other in his background that would have rendered him ineligible or inadmissible. That's exactly correct, your honor. Thank you, counsel. I think the clock's got you, but you'll have your full rebuttal time. Thank you, your honor. May it please the court? Can you hear me? Jenny Lee on behalf of the respondent, the Attorney General of the United States. The court should uphold the board's 2017 decisions and find that it did not abuse its discretion in denying petitioner's second and untimely motion to reopen, as well as his motion for reconsideration. This case has a whale-sized red herring, which is a 237A1H waiver. That is not what is most important about resolving this case. What is most important is the VWP, the voluntary, I'm sorry, Visa Waiver Program, which is the program that petitioner used to enter the United States. Mr. Gomez cannot show that he was prejudiced by his prior attorney's conduct because he was never eligible to adjust having entered under the Visa Waiver Program, except for the limited exceptions that petitioner's counsel discussed. Over 22 million people enter the United States under the Visa Waiver Program. What this program does is the United States waives the requirement of a person to get a non-immigrant visa, and in return, the person has to waive rights to immigration benefits for most immigration benefits. Despite having specifically waived immigration benefits, Mr. Gomez claims that he should be put into a better position than the hundreds of millions of people who enter the United States under the Visa Waiver Program because he committed fraud against the United States government. Going back to the 237A1H. Well, I'll ask, whatever we think of that policy argument, doesn't the statute establish a waiver for some category of people who have engaged in fraud? That is correct, Your Honor. However, it is not used by people, it is used for things like marriage fraud, and by fraud in the sense that a person will come in as an unmarried when they're actually married, son or daughter of a USC. But in those cases, they did not enter under the Visa Waiver Program. Is that, where do you see that restriction in the statute? If you look at HUSC 1187, which is the Visa Waiver Program and the waiver of rights, there is no exception for fraud. There's no exception that you can somehow get benefits under this program because you were lucky enough to get a fraudulent birth certificate, fool the government, adjust status, and a few years later, get caught. What if he had faked his marriage certificate or something like that? Why are we limiting, why are we setting aside his type of fraud and allowing other types of fraud? That's not where I'm quite following you. Are you saying that this provision could never apply to anyone admitted under the Visa Waiver Program, ever? That is what the agency found in this case. Well, right, but what are you saying? That is what I am saying as well. I did some research and I found only one case where a person entered under the Visa Waiver Program and did seek this waiver, but that was denied as a matter of discretion, which is the next step after eligibility. So I don't know why the immigration judge went that far. Sometimes immigration courts will go to discretion because that is a stronger way to deny a case. Turning to the 237-A1H waiver, saying that the... Let me ask you as a prefatory matter, the same question I asked Mr. Sala, are we obliged to give Chevron deference to a matter of vigor? Yes, Your Honor, but... You don't think it's clear and unambiguous on its face, in which case, I would not. That is correct, Your Honor. And... You think it's ambiguous and requires us to seek the help of the BIA in discerning meaning? Yes, Your Honor, and I will also add to that, whether adjustment of status is an admission or not, that doesn't matter. Petitioner is putting the cart before the horse. He has to show that he has an immigrant visa. And you can't use the fraud waiver to waive the immigrant visa aspect. The only thing the fraud waiver does is it waives the person's inadmissibility based on the fraud. That seems like a reasonable argument, but doesn't that go back to the same Chevron deference question? Because it seems that In re Agor determined that the visa that the woman received on account of fraud did satisfy the requirement here. I'm sorry, I do not follow that question. It seems like Agor answers that question in a different way than you're suggesting. Why is that not so? In matter of Agor, I believe they said that adjustment of status can qualify for admission for the purpose of the 237 A1H waiver. The difference is that the alien in Agor did not come in under the visa waiver program, where it would have been impossible... That's a different question than whether the granting of her visa due to fraud counted as having a document that's required. You're answering the question at an earlier step rather than at that step, right? I believe so. I'm not exactly understanding your question, Your Honor. I apologize. Why is this case different than In re Agor with respect to the requirement of having a visa? I understand. The main difference is that Petitioner entered under the visa waiver program. So if he did not enter under the visa waiver program, then he would be eligible, prima facie eligible, for the 237 A1H waiver. But that's not what we have here. We're just skipping steps. In this case, he should never have adjusted. He should never have gotten to the point where he can seek, I guess, this waiver. And the only reason why he is able to do that is because he committed a fraud and a crime against the United States government. The reason why the visa waiver program still applies to Mr. Gomez is because he entered under the program. His lawful permanent resident status terminated when the immigration judge terminated his status, and that decision became final when the board affirmed in 2006. And then again, the only reason why he became an LPR was because he committed fraud against the United States government. I want to go back to the question of Chevron deference and the matter of AGR if you can help me with that. One term there is at the time of such admission. What does that actually mean? Does the statute provide a plain meaning answer that it refers to the time of the fraudulent admission? And if the answer is no, do I give Chevron deference? Or is the answer not clear from the face of the statute itself? The answer is not clear from the face of the statute itself. However, by looking at all of the INA, I believe it makes sense that an admission, that an adjustment status can qualify as an admission. I think one problem with that argument is that you're saying that the reason he doesn't qualify under 237 is that at the time of his real admission, he was on the visa waiver program and therefore he's excluded from all these rights. Is that correct? Yes, Your Honor. But if that's the case, then aren't you arguing that the admission has a different meaning than what the In re Agor decision is suggesting admission could mean? And that may be very true, but it's hard to argue that we, that that statute is not clear and also that it clearly means that his time of admission must have been when he first entered the country rather than when he adjusted his status. Based on Judge Marcus and Judge Creon's question, I do see that it does not seem clear, which would be another reason why Petitioner cannot meet the eligibility requirements for 237A1H. But regardless, Petitioner, Mr. Gomez's position is that having committed fraud against the United States government, he is entitled to more rights. And if this case is to go back, there is really no light at the end of the tunnel. He entered under the visa waiver program. His LPR status was terminated. He is not eligible for any rights. And for some mysterious reason, if he was able to establish eligibility for this waiver, he would somehow have to overcome the negative discretionary aspect that he committed fraud against the United States government and was convicted of that crime. Can you go to the visa waiver program section 1187 and tell me which provisions you're relying on for the waiver? Yes, Your Honor. I know it has a subsection on waiver. Is that the only one? Yes, Your Honor. 1187B2, an alien may not be provided a waiver under the program unless the alien has waived any right to contest, other than on the basis of an application for asylum, any action for removal of the alien. And under the regulations, the Department of Homeland Security expanded that to include adjustment of status as a spouse of a United States citizen or under the Cuban Adjustment Act. An alien may not be provided a waiver under the program unless the alien has waived any right. Tell me the next part you rely on. Yes, right to contest, which is number two, to contest other than on the basis of an application for asylum, any action for removal of the alien. What about one there? There's an or. You're saying either one. Right. All you have to satisfy is B2. Yes, Your Honor. One doesn't apply because he adjusted through fraud. ICE was not able to just give him a removal order under the Voluntary Waiver Program. So under this program, the United States Waiver Program waives the non-immigrant visa requirement, and the person taking advantage of the program waives certain rights, and one of them being the right to contest the removability aside from the limited circumstances, which is asylum and adjustment under two circumstances that I spoke about earlier. DHS can just give them a voluntary visa waiver program removal order, and then they must leave. Let's say that Mr. Gomez really were from Cuba, and so he had gotten his adjustment through entirely correct means. Would he still be limited by the terms of his initial entry into the United States, or does that status change, I expect, impact his ability in other respects? If he was really Cuban and he came in under the Visa Waiver Program, then he would, I guess, fall under the exception, the limited exception that allows people who enter under this program to adjust. Right. So is your position that because he obtained his adjustment of status fraudulently, his rights are now entirely based on his original form of entry rather than on that adjustment of status? That is correct, Your Honor. And, again, that adjustment of status is no longer there because it was terminated and that order was final and it was not petitioned for review. So what does the fifth prong and otherwise admissible mean? I read that the same as Mr. Gomez's counsel, that otherwise inadmissible would mean that if the person had committed other crimes, that would make them inadmissible. And I apologize that there are so many terms, inadmissible, admitted, but they each have their own legal meaning. So it doesn't go back to the original waiver program. It's just otherwise admissible for some other reason. Yes, Your Honor. Such as a criminal conviction. It has nothing to do with the initial entry. That is my understanding of how that works. So then that leaves you just with the waiver of rights position, that he can't contest his removability because he came in under that program. That is correct, Your Honor. Are you just standing on the threshold issue? Yes, Your Honor. The threshold issue meaning that he entered under the visa waiver program. He was never eligible for that immigrant visa. Is that the basis that BIA ruled? Yes, Your Honor. That's the basis that the board had ruled on numerous occasions. Starting from the first board decision of April 2016, they said on administrative record 178, last paragraph in the middle. Okay. And on matter of Agor, then do you contend that has nothing to do with this case or are you saying he doesn't comply under that as well? I'm saying that the board did not . . . that it was not . . . that the government is not relying on that for the basis of the reason why the agency did not . . . It's an intervening decision, so tell us why we shouldn't remand to have the board do a ruling on matter of Agor. Well, in the very last board decision on December 15th, the board said . . . Remember, this is a motion to reconsider, so it's building on top of the early decision. Right, right. In the last paragraph, administrative record 3, last paragraph 3, it said the motion makes the argument that the respondent was admitted, in quotes, and then the next word is but, meaning the admission is not important here. What is important is that he came into the Visa Waiver Program and he was never eligible to adjust. So you're saying that was after the briefing on in re matter of Agor? That is correct, Your Honor. Being raised. Was in re Agor ever raised at the administrative level? Yes, Your Honor. The petitioner's first counsel, he filed a motion to reopen based on matter of Agor saying that petitioner now has an admission for the purpose of the waiver. And then it was raised again in the ineffective assistance of counsel based motion to reopen, and then again it was raised in the motion to reconsider. And you're arguing that the text of the responses indicate that that decision actually was considered, even though it wasn't explicitly cited? Yes, Your Honor. I have one more question on Agor. They say was in possession of an immigrant visa or the equivalent. Are you also saying that's the fourth prong? He was never in possession of an immigrant visa. Is that correct? That is correct, Your Honor. It would have been, he was, the reason why he couldn't have gone that far is because he came into the Visa Waiver Program, but for the fraud. But then it says, or the equivalent, and I guess you're saying, I'm just saying maybe he doesn't even meet prong four, but the equivalent you're saying can't be the fraudulent adjustment of status. It could be if he did not enter under the Visa Waiver Program. I got it. Thank you, Your Honor. If the court has no further questions, the government. Thank you much. I'm sorry. Do you have a case that deals with, besides the BIA, this threshold claim you're making about the Visa Waiver Program? No, Your Honor. Okay. May it please the court, and that's exactly where I was going, the Visa Waiver Program is the red herring. This is the red herring the government's using to try to preclude my client from seeking the waiver. It has nothing to do with the Visa Waiver Program. There's nothing in the statute that precludes someone who adjusted status fraudulently after having entered on the Visa Waiver Program by seeking this waiver. They're adding requirements that don't exist in the law. The Visa Waiver Program, the limits on that program, apply to someone who's still a Visa Waiver entrant, who never subsequently became a resident. So, for example, a person comes in on the Visa Waiver, overstays their time, the government picks them up. That person has no right to a removal hearing because they're in Visa Waiver overstay except for asylum. If they haven't gotten picked up, that person can marry a citizen and apply for residency or go through Cuban adjustment. It would be no different, as Judge Grant asked, what if he had come in on the Visa Waiver Program and adjusted through a fake marriage? Would he be eligible for the waiver? Of course he would. It happens all the time. And there's a reason why there isn't any decision holding that someone who comes in on a Visa Waiver can't do a 237A1H, because there is no such law. It doesn't exist. They're making stuff up. They are making stuff up. The law is not on their side. The facts are on their side. So they throw out the red herring. He came in on a Visa Waiver. He's a resident like any other resident. The fact that he procured it through a false birth certificate that's no different than had he procured it through a fake marriage or through some other fraud. It doesn't distinguish between types of fraud that you can and can't apply for the waiver for. It doesn't distinguish how you entered. AGOR is clear. If you adjust status, that is the equivalent document. The problem is the record is such a mess, the board never actually looked at what took place. And in the board's decision denying the motion to reopen based on a Visa Waiver can't adjust status under the Cuban Adjustment Act. And then when I filed the motion to reconsider pointing out, wait a second, yes it does, and here's the law, they changed their theory as to why now he wasn't eligible for the waiver. What do you think about the contention that the, that Enrique Agor actually was considered and addressed? It was considered in a different context. It was considered, Your Honor, from the context that he was still a Visa Waiver entrant. He wasn't, he was a resident. He was a resident. Once he becomes a resident, that's it. He's no longer the Visa Waiver. He is a permanent resident. And if we're now going to start treating a permanent resident who came on a Visa Waiver differently, as you had asked, than a permanent resident who came on a Visa, you've got a major, major equal protection issue there. You can't be treating residents differently based upon how they initially entered the United States. They're either residents or they're not. Help me with this because I'm confused by it being circular. I understand that you get a fraud waiver. Right. Okay. And so I understand that even though you got the Cuban status by falsely submitting a fraudulent birth certificate, that you had been given adjustment, but now you can seek a waiver of the fraud, because fraud would make you inadmissible, right? That's the whole point. Okay. And so what I don't understand is how you can then use the status, because if I listen to what you say, it sounds like because he fraudulently got the status, okay, then under AGOR, he meets the requirements of AGOR. That's correct. To be admissible for the waiver. That's correct. So what that would mean is just get a fraudulent adjustment of status, and then you can get a waiver, and all the requirements of the waiver are otherwise admissible, an immigrant visa or equivalent. You'd probably say the equivalent is the fraudulent adjustment of status, and it seems circular to me. Well, no, no. Why is it not circular? Tell me an external thing besides number two, which is the marriage and that kind of business. Tell me how he meets four and five. It's not that he can get a waiver. He can seek a waiver. He can seek a waiver before the judge, and the judge . . . Or she says they're not going to give him the waiver because of fraud, which we know we hear that all the time. Yeah. Okay, but how is he eligible to seek a waiver? Because he's a resident who committed . . . That's the whole purpose of this waiver. The whole purpose, the reason Congress enacted this waiver, is that there are people who obtain their residency fraudulently. Then years go by. The government discovers it. The people have been here years. They have roots. They have rehabilitated. They have children. Well, if they did that, then all you would have to show is number one. No. I mean, you would just have to meet prong one. They could have said the waiver. Igor could have said you can seek it just by showing that you're . . . Incorrect. The issue in Igor was whether the waiver was available to someone. That's a whole . . . That was the unresolved issue that Igor resolved, whether someone who adjusted status and became a resident here, albeit through fraudulent means, was eligible to seek the waiver, or only people who entered with residency with immigrant visas were eligible. And Igor said both classes of people, both classes of residents, those who entered with immigrant visas and those who adjusted are eligible. He squarely . . . Yeah, but you didn't have a fraudulent adjustment there. Yes, he did. He had a fraudulent adjustment. He had a fake marriage. Okay, but he came in under a non-immigrant visa. That's not the . . . No, the adjustment is the process by which you become a resident. He didn't . . . Mr. Gomez didn't have a fraudulent entry. He entered on the Visa Waiver Program legally. He had no fraudulent entry. The fraud was in obtaining the residency through the fake birth certificate, just like Mr. Igor obtained residency through a fake marriage. Yeah, but he came in. He could show a non-immigrant visa because he came in on a non-immigrant visa. It's irrelevant, Your Honor. He could meet prong four because he had a non-immigrant visa. You don't have to have come in on a non-immigrant visa. Where is it in the statute that says you have to have entered on a non-immigrant visa? They're making that up. They're adding that into the statute. There's no such requirement in the statute. The statute requires you to have been a resident who obtained residency through fraud, and you have the anchor relative, and you had no other ground of admissibility that applied to you, all of which he meets, Mr. Gomez meets, and now you can seek the waiver. The immigration judge . . . Until the last time I ask it, then I'm going to be quiet. Okay. Number three, have been in possession of an immigrant visa. Right. Igor had been in possession of an immigrant visa because that's how he came. No, that's not how he came, Your Honor. Igor came with a visitor's visa, not an immigrant visa. Igor came with a non-immigrant visa, not an immigrant visa. Okay. Are you saying that the adjustment of status is what gave him the equivalent of an immigrant visa? That's precisely what Igor holds on page 582, paragraph 2. And as I understand it, the only distinction that the government is drawing between Igor and Gomez is that Gomez initially came in under the other program. Absolutely correct, which is no distinction because it's a distinction that they have created to foreclose relief. That's not found in the statute or anywhere else. And just so I understand what your argument is, what does otherwise admissible mean? What do you show that . . . how did you show your otherwise . . . Well, we agree with otherwise admissible being just, well, you can't prove a negative. So you can't prove I don't have any convictions or I don't. In other words, there was nothing else in his background that rendered him ineligible for residency. And the government agrees that my interpretation of that . . . So five, they meant to say inadmissible rather than admissible. Sorry, Your Honor? Otherwise admissible really means inadmissible. In other words, yeah, they phrased it. It said that he was not inadmissible on any other ground, correct, or otherwise admissible, correct. Got you. Thanks very much. Thank you. Thank you. Thank you both. We're going to take a 10-minute break.